1  MARK D. SELWYN (SBN 244180)
   mark.selwyn@wilmerhale.com
2  WILMER CUTLER PICKERING
3     HALE AND DORR LLP
   950 Page Mill Road
4  Palo Alto, California 94304
   Tel:     (650) 858-6000
5  Fax:     (650) 858-6100

6  MATTHEW J. HAWKINSON (SBN 248216)
7  matthew.hawkinson@wilmerhale.com
   WILMER CUTLER PICKERING
8     HALE AND DORR LLP
   350 South Grand Avenue, Suite 2100
9  Los Angeles, California 90071
   Tel:     (213) 443-5473
10 Fax:     (213) 443-5400

11 *Attorneys for Apple Inc.*

12              **UNITED STATES DISTRICT COURT**
13            **NORTHERN DISTRICT OF CALIFORNIA**

14

15 IPCOM GMBH & CO. KG,                    )  Case No. 5:14-MC-80037-EJD (PSG)
                                           )
16              Plaintiff,                 )
                                           )  **APPLE INC.'S MOTION TO**
17       vs.                               )  **QUASH SUBPOENA IN A CIVIL**
                                           )  **CASE**
18                                         )
19 APPLE INC.,                             )  **Judge:  Hon. Paul S. Grewal**
                                           )  **Courtroom:  5, 4th Floor**
20              Defendant.                 )  **Date:     June 10, 2014**
                                           )  **Time:     10:00 a.m.**
21                                         )
                                           )
22                                         )
                                           )
23

24

25

26

27

28

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on Tuesday, June 10, 2014, or at the earliest practicable time thereafter on this Court's schedule, in the courtroom of the Honorable Paul S. Grewal, 280 South First Street, San Jose, California, 95113, Apple Inc. will and hereby does move for an order quashing the subpoena served by IPCom.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the supporting declaration of Wolrad Prinz zu Waldeck und Pyrmont with exhibits, and any other matter the Court may properly consider.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

IPCom seeks highly confidential Apple licensing documents for use in a German legal proceeding that IPCom has already lost on the merits.  IPCom has appealed, but unless and until the German appellate court reverses the judgment, IPCom has no need or legitimate use for this or any other discovery from Apple.  It would be improper for IPCom to seek this discovery, for example, for use in license negotiations with Apple.  In short, IPCom has no proper justification for seeking this discovery, and Apple respectfully requests that the Court quash the subpoena.

**II.    FACTUAL BACKGROUND**

IPCom initiated the German litigation in March 2012.  IPCom originally asserted a single patent that IPCom alleged was essential to the UMTS standard, and sought damages of over €1.5 billion.  (Waldeck Declaration, Ex. A [English translation of IPCom's original German complaint] and Ex. B [English translation of IPCom's German reply brief].)  IPCom later added a second, related patent to the litigation, and maintained its damages request, which was equivalent to over $2 billion dollars.  (*Id.*, Ex. C [English translation of IPCom's second German complaint].)  IPCom's combination of requests for adjudication on both the technical merits ***and*** damages in a single filing is unusual for German patent infringement litigation.  (*Id.* ¶ 8.)  While not excluded under the German procedural rules, the amount of damages is generally the subject of a second, separate proceeding after a judgment of infringement has issued, and, in the majority of cases, only after such judgment has become final.  (*Id.* ¶ 9.)

In 2013, the parties submitted extensive patent merits and remedy briefing.  These included approximately 300 pages of briefing and approximately 750 pages of expert reports and supporting exhibits on damages issues.  (*Id.* ¶ 10.)  The German district court then held a full hearing before a three-judge panel—the German equivalent of a trial—on February 11, 2014.  In its introduction to the parties, the German court commented on IPCom's unusual procedural approach, and stated that it would not hear argument on the amount of damages at this juncture but would instead follow the normal course of first adjudicating the merits of the patent infringement allegation.  (*Id.* ¶ 11.)  The court clarified that if IPCom eventually succeeds in establishing infringement, the court would issue

an interlocutory judgment only as to the infringement claim (sec. 304 German Code of Civil Procedure)—which is subject to a separate appeal—and would address the amount of damages only after a finding of infringement has become final.  (*Id.* ¶ 12.)  Consequently, the issue of damages was not argued at all in the oral hearing, nor has any evidence been taken by the court.  The German court entered judgment against IPCom on February 28, 2014, finding that there was no infringement of either of the two patents asserted by IPCom.  (*Id.*, Ex. D and E [English translations of the two lower German court judgments].)

On April 3, 2014, this Court ordered IPCom to file a status update "regarding the current posture of the German case and indicate whether the discovery sought by order of this court remains warranted."  (*See* Dkt. 3.)  On April 10, 2014, IPCom filed the ordered status update.  (*See* Dkt. 4.)  The status update indicated that "[o]n February 28, 2014, the District Court of Mannheim dismissed IPCom's German actions, finding that there was no infringement."  (*Id.* at 2.)  The status report further noted that IPCom appealed the dismissal on March 6, 2014, and that the appeal is currently pending before the Court of Appeals in Karlsruhe, Germany.  (*Id.*)

## III.   ARGUMENT

### A.   Legal Standard

Although 28 U.S.C. § 1782 can, under the right circumstances, be an appropriate vehicle for taking discovery to assist in foreign proceedings, "district courts must be alert for potential abuses that would warrant a denial of an application to be allowed to take such discovery."  (*Applications of Heraeus Kulzer, GmbH*, 633 F.3d 591, 594 (7th Cir. 2011).)  Such abuses include seeking discovery to "harass the defendant rather than to obtain evidence for use in a trial."  (*Id.*)  Furthermore, "[a] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."  (*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).)  Even if the statutory requirements are met, a district court is granted "wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems."  (*Esses v. Hanania*, 101 F.3d 873, 876 (2d Cir. 1996).)  Courts have denied § 1782 applications as untimely where the applicant did not first seek production in the foreign forum.  (*Aventis Pharma v. Wyeth*, 2009 WL 3754191, at *2-3 (S.D.N.Y. Nov. 6, 2009); *see also In re Mare*

*Shipping Inc.*, 2013 WL 576110413 (S.D.N.Y. Oct. 22, 2013) (denying § 1782 application where trial in Spain had concluded and applicants did not seek the relevant discovery in the evidence-gathering period or during the course of the trial).)

## A.      IPCom's Subpoena Should Be Quashed as Untimely

The German trial is over, and IPCom lost.  If IPCom believed it actually needed the Apple licenses for the German litigation, it could have sought them well in advance of the briefing, reports, and trial in that matter.  It did not, instead choosing to wait until February 7, 2014—three days before trial and nearly two years after filing the complaint on March 2, 2012—to file its §1782 application.  IPCom failed to make a diligent attempt to obtain discovery for use in that trial, and its belated attempt to seek the currently requested discovery is an improper use of § 1782.  (*See Aventis* 2009 WL 3754191, at *3; *see also In re Mare Shipping Inc.*, 2013 WL 576110413.)

For example, in the *Aventis* case, the court denied a Section 1782 application where, as here, it was untimely given the procedural posture of the foreign case:

> First, despite the fact that it appears that the French Court has the jurisdictional reach over these documents, in five years, Aventis  has never sought the subject § 1782 documents in the French Tribunal. . . . Second, Avantis' Application is untimely given the current procedural posture of the case before the French Courts.  Granting Aventis' Application would frustrate, rather than promote, the twin aims of § 1782: "'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  Put simply, this Court would not be providing "efficient means of assistance" to the litigants or the French Courts by allowing Aventis to rush to a U.S. Court on the eve of an appeal in hopes of obtaining discovery it could have requested in this same Court starting over five years ago.

(*Aventis*, 2009 WL 3754191 at 3.)  That logic applies with equal force in this case, where IPCom is seeking discovery for use after trial has concluded.[1]

---

[1]      There is a further procedural issue with IPCom's request: it seeks a form of discovery from Apple that Apple might not be able to obtain from IPCom, given (a) IPCom's status as a foreign corporation and (b) the more limited German discovery procedures.  IPCom cites no precedent supporting the use of Section 1782 to create a stilted, one-sided discovery record.

**B.     IPCom's Subpoena Should Be Quashed Because IPCom Has No Current Need for the Requested Documents**

IPCom argued in its status report that the requested discovery is still relevant to the German proceedings because the German appeals court may rely on the discovery "in the calculation of damages." (*See* Dkt. 4 at 2.)  IPCom's contention that damages issues will be addressed by the German appellate court, while not expressly forbidden under German law, appears unlikely.  (*See* Waldeck Declaration, ¶ 14.)

To begin, because the lower German court decided the case based solely on a finding of noninfringement, explicitly stating that it intended to address the question of damages *only* in a subsequent hearing and *only* after a final decision on infringement, the amount of damages were never addressed in the oral argument before the lower German court.  (*Id.* ¶ 15.)  It would be inappropriate for the German appellate court, whose primary function is the review of first instance decisions (*see* Baumbach/Lauterbach/Albers/Hartmann, Code of Civil Procedure [Zivilprozessordnung], 72nd Ed. (2014), § 538 ZPO marginal no. 22), to issue a decision on the merits of the present damages case in the first instance.  While German appellate courts do have some discretion to determine damages under section 538 para. 2 No 4 of the German Code of Civil Procedure, doing so in this case would unduly deprive Apple of the full fact-finding process in the lower German court.  (*see*, *e.g.*, German Federal Supreme Court [BGH], NJW-RR 2010, 1048; Stein/Jonas, Code of Civil Procedure [Zivilprozessordnung], 22nd Ed. (2013), § 538 marginal note 45)(holding that the appellate court must weigh the interest of not depriving one party of a full fact-finding process against the disadvantage of increased costs and duration of the proceedings.) (*See* Waldeck Declaration, ¶ 18.)

Consistent with these authorities, Apple plans to file a request for remittal to the lower German court under Section 538 para. 2 No. 4 of the German Code of Civil Procedure, if the district court's adverse finding against IPCom is reversed or vacated.  Apple believes that the circumstances in this case would thus require remission to the lower German court for the determination of damages—*if* (and only if) the appeals court finds error in the district court's liability finding. (Waldeck Declaration, ¶ 22.)

Consequently, even if the German appellate court reversed the decision and determined infringement, it would be highly unlikely to decide on the amount of damages given the lack any record on damages established at the lower German court—and the clear benefits of allowing the district court to decide the issues in the first instance, in particular because this appears to be the first case in which the amount of damages with regard to a FRAND-encumbered patent would be determined by a German court.  (*Id.*, ¶ 21.)  The German appellate court would most likely remand the proceedings back to the lower German court for the determination of damages under Sec. 538 para. 2, no. 4 Code of Civil Procedure.  (*Id.*, ¶ 23.)  Of course, if the German appellate court affirms the non-infringement decision, the litigation will conclude entirely.  Either way, IPCom has no need for the Apple licenses now.

### C.     IPCom's Subpoena Should Be Quashed To the Extent that IPCom Seeks to Use the Documents for an Improper Purpose

To the extent that IPCom is seeking this discovery for use in any negotiations with Apple, that would obviously be improper.  Section 1782 is expressly limited to discovery of materials "for use in a proceeding in a foreign or international tribunal."  (28 U.S.C. § 1782.)  Asking Apple to produce highly confidential materials for non-litigation purposes would amount to impermissible harassment.  (*See generally Applications of Kulzer*, 633 F.3d at 594.)

### D.     At Most, IPCom's Subpoena Should Be Quashed Without Prejudice To Allow IPCom To Refile Later As Necessary—With An Appropriate Protective Order

Although the foregoing considerations merit quashing IPCom's subpoena with prejudice, at most the Court could consider quashing without prejudice, to allow IPCom to refile later if it prevailed on appeal in Germany.  However, if the Court quashed without prejudice, Apple respectfully requests that the Court also instruct that any later subpoena should be accompanied by IPCom agreeing to a protective order strictly limiting access to IPCom's outside counsel that do not have any financial interest in IPCom and that do not represent IPCom in licensing negotiations.  This would exclude, for example, IPCom's principal owner Bernhard Frohwitter, who is also a lawyer and the name partner of the Frohwitter firm that represents IPCom.  Mr. Frohwitter prosecutes, litigates, and licenses IPCom's patents, and should not be given access to Apple's confidential business information.  In addition, given that Apple's license agreements include non-disclosure and

notification provisions, Apple would need sufficient time to notify relevant third parties of any such production, and give them the opportunity to be heard.  Finally, the protective order should require that the parties take all reasonable efforts to protect the confidentiality of the license information in any proceedings in Germany.

* * *

In sum, Apple asks that the Court quash the subpoena, given the adverse merits judgment against IPCom in Germany; IPCom's undue delay in seeking this discovery; and the unavailability of using § 1782 to obtain information for non-litigation purposes like license negotiations.  To the extent that the Court does not quash the subpoena with prejudice, Apple respectfully requests (a) that the subpoena be quashed without prejudice to allow IPCom to refile if it prevails on appeal and (b) any later subpoena should be accompanied by IPCom agreeing to an appropriate protective order that includes the safeguards discussed above.

Dated:  May 5, 2014

Respectfully submitted,
APPLE INC.

By its attorneys:

*/s/ Mark D. Selwyn*

Mark D. Selwyn (SBN 244180)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

APPLE'S MOTION TO QUASH SUBPOENA
Case No. 5:14-MC-80037-EJD (PSG)